UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-413-CHB-CHL

**DEBORAH HOBBS,**                                                        **Plaintiff,**

v.

**GENESYS TECHNOLOGY N.V.,**                             **Defendant.**

**MEMORANDUM OPINION & ORDER**

      Before the Court is the Motion for Alternative Service filed by Plaintiff Deborah Hobbs. (DN 5.) Plaintiff moves for alternative service by informal in-person service by a process serve and by email pursuant to Federal Rule of Civil Procedure 4(f)(3). (*Id.* at 24.) For the reasons set forth below, Plaintiff's motion is **DENIED without prejudice**.

    1. **BACKGROUND**

      Genesys Technology N.V. d/b/a Jumba Bet ("Genesys") is headquartered in Curaçao. (DN 1 at 3.) Genesys owns and operates an online casino website, through which it conducts business in this District, in the Commonwealth of Kentucky, and throughout the United States. (*Id.*) On August 7, 2023, Plaintiff Deborah Hobbs ("Hobbs") brought this action against Genesys, alleging that Genesys's online casino illegally profited from Kentucky consumers. (*Id.*; *see* DN 1.)

      Prior to the instant action, Hobbs's counsel Philip Fraietta represented a plaintiff in another action, *Taucher v. Genesys Technology N.V.*, 4:23CV-60-JHM, with similar allegations against Genesys that has since been dismissed by this Court. (DN 5-1 at 33.) In *Taucher*, Mr. Fraietta informally served Genesys at its headquarters in Curaçao. (*Id.* at 32-33.) Genesys responded to the plaintiff—not counsel--directly through email and telephone. (*Id.* at 33.) Shortly thereafter,

1

Mr. Fraietta learned from Genesys counsel Eugene Rome that Genesys had reached a settlement with the plaintiff directly. (*Id.*) After confirming the validity of the settlement, Mr. Fraietta filed a notice of voluntary dismissal on the plaintiff's behalf and the action was dismissed. (*Id.*) Mr. Fraietta explains that he informally served Genesys in *Taucher* because there was no internationally agreed means to effectuate formal service of process. (*Id.*)

Following the filing of the instant action, Mr. Fraietta emailed Mr. Rome to inquire as to whether Genesys would accept service by email or waive service. (*Id.*) Mr. Rome did not respond. (*Id.*) After the Clerk issued a summons, Mr. Fraietta again emailed Mr. Rome with a copy of the summons and inquired the same about method of service. (*Id.*) Mr. Rome indicated that he had "sent the complaint to the client contact" and was "waiting for further direction." (*Id* at 34.) Mr. Fraietta inquired two more times by email and informed Mr. Rome of Hobbs's intent to file the instant motion. (*Id.*) Mr. Fraietta received no further response from Mr. Rome. (*Id.*)

## 2. DISCUSSION

Federal Rule of Civil Procedure 4(f) provides three methods of effectuating service on a foreign corporation: (1) by internationally agreed upon means, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (hereinafter, the "Hague Convention"); (2) by a method that is reasonably calculated to give notice in the absence of an international agreement, or (3) by other means not prohibited by international agreement at the court's discretion. Fed. R. Civ. P. 4(f)(1)-(3); *see also* Fed. R. Civ. P. 4(h). Hobbs selected the third option and moves the Court to authorize alternative service pursuant to Rule 4(f)(3) through either informal in-person service or service by e-mail or mail upon an attorney located in the United States. Hobbs asserts that the first method of service pursuant to Rule 4(f)(1)

is not applicable because Curaçao is not a signatory to the Hague Convention or any other international agreement. Hobbs asserts that the Court may authorize alternative service under Rule 4(f)(3), although it appears that service may also be authorized under Rule 4(f)(2). In the case of service under Rule 4(f)(3), the Advisory Committee envisions circumstances where there is an international agreement, *i.e.*, the Hague Convention, but some factor has prevented service by ordinary methods of service pursuant to the international agreement. *See Fed. R. Civ. P.* advisory committee note to 1993 amendment. For example, "the Hague Convention authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by circumstances." *Id.* Other circumstances that might justify service under Rule 4(f)(3) include "the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention" as well as a Central Authority's failure to enforce United States antitrust law. *Id.* In each of the described instances, an international agreement is in place but is thwarted by other circumstances. The Committee also adds that "an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law." *Id.* In contrast, Rule 4(f)(2) sets forth procedures for where there "is no internationally agreed means," as Hobbs argues is the case here.

With respect to all three methods, the Sixth Circuit "has not addressed the issue of whether there is a hierarchy or preference for the method of service under Rule 4(f)." *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.,* 250 F. Supp. 3d 296, 306 (W.D. Ky. 2017) (quoting *Flava Works, Inc. v. Does 1–26*, 2013 WL 1751468, at *7 (N.D. Ill. Apr. 19, 2013). Instead, courts in the Sixth Circuit have "consistently recognized that there is no hierarchy" between methods of service prescribed by Rule 4(f)(1)-(3). *See Noco Co. v. CF Grp. SZKMS Co.*, 571 F. Supp. 3d 862,

867 (N.D. Ohio 2021). Therefore, a party need not pursue any one method before becoming eligible to pursue another with one exception: if the Hague Convention applies as set forth in Rule 4(f)(1), a party must first attempt service by the means designated in the Convention and a court may authorize alternative service under Rule 4(f)(3) only in special circumstances, such as if the foreign nation refuses to serve a complaint. *Id.* at 868.

Hobbs's motion does not entirely resolve the question of whether the Hague Convention is applicable because it is silent as to unique nature of Curaçao's association with the Netherlands. Curaçao is an outpost of the Netherlands, alongside Aruba and St. Maarten, that is described as a Caribbean "part" of the Kingdom of the Netherlands.[1] Curaçao itself does not appear on the list of signatories to the Hague Convention, but the Netherlands does.[2] In *Honig*, a corporate defendant asserted that Curaçao is a party to the Hague Convention through its association with the Netherlands. *See Honig v. Cardis Enterprises N.V.*, No. 14CV7548SJFGRB, 2016 WL 6304695, at *5 (E.D.N.Y. Oct. 27, 2016). The *Honig* court, in absence of authority to the contrary, accepted the defendant's assertion and applied the procedures set forth in the Hague Convention pursuant to Rule 4(f)(1). *Id.* Given that the Court has encountered conflicting assertions regarding Curaçao's status as a signatory, the applicability of Rule 4(f)(1) is unresolved without further clarification. Therefore, the Court will deny the motion but allow Hobbs an opportunity to supplement her motion with relevant authority supporting her position that Curaçao is not a signatory to the Hague Convention by extension of its association with the Netherlands.

---

[1] *Representation of the Netherlands in Aruba, Curaçao and St Maarten*, Neth., https://www.government.nl/topics/caribbean-parts-of-the-kingdom/representation-of-the-netherlands-in-aruba-curacao-and-st-maarten (last visited Feb. 2, 2024).

[2] *HCCH Members*, The Hague Conference on International Law, https://www.hcch.net/en/states/hcch-members (last visited Feb. 2, 2024).

Additionally, Hobbs has not met the requirements for alternative service set forth in Rule 4(f)(3) or Rule 4(f)(2), regardless of which is applicable to Hobbs's circumstances. "Even if Rule 4(f) does not establish a preferred method of service among its option, many courts do require, as a factor in weighing whether to exercise its discretion and allow substituted service, a 'showing that reasonable efforts to serve the defendant have already been made, and that the Court's intervention will avoid further burdensome or futile attempts at service.'" *Id.* (quoting *United States v. Alphatec Spine, Inc.,* 2016 WL 1182260, at *2 (S.D. Ohio Mar. 28, 2016). Hobbs need not exhaust other means before resorting to Rule 4(f)(3), but she is required "to demonstrate that the facts and circumstances of the present case dictate the [court's] intervention under Rule 4(f)(3)[.]" *Keck v. Alibaba.com, Inc.*, 330 F.R.D. 255, 259-260 (N.D. Cal. 2018) (citing *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002)). Here, Hobbs did nothing other than e-mail Genesys's former counsel before declaring service to be futile. She asserts that "physically deliver[ing]" the complaint to Genesys had been successful in the *Taucher*, except that it resulted in Genesys settling with the *Taucher* plaintiff without notifying plaintiff's counsel—a result Hobbs hopes to avoid in this action. (DN 5 at 29.) However, Genesys's strategic decision to settle *Taucher* without participating in the litigation does not support a finding that service was adequate. And the circumstances of a separate action are not relevant to the Court's determination in this one. In *Phoenix*, the court evaluated whether the moving party's prior attempts had been reasonable. But Hobbs has made only one attempt for this Court to evaluate, and it is insufficient. Hobbs does not indicate that any authority or person, including Curaçao or Genesys, has interfered with or sought to prevent service such that any future attempts at service would be futile. The *Phoenix* court contemplated authorizing alternative

5

service under Rule 4(f)(3) on a Russian corporation through its attorney in the United States. *Phoenix Process Equip. Co.*, 250 F. Supp. 3d at 307. Russia, by virtue of being a signatory to the Hague Convention, required international service of process for Russian defendants to be made to Russia's Central Authority. *Id.* The moving party successfully established that service would be futile due to Russia's policy of not cooperating with the United States and general refusal to deliver service made through its Central Authority. *Id.* at 307-08. Similarly, in *Rio*, the Ninth Circuit authorized service by e-mail because the defendant corporation "had neither an office nor a door," and the moving party could show that it made multiple attempts to serve the defendant through conventional means both in the United States and in the foreign jurisdiction. *Rio Properties,* 284 F.3d at 1012-15. The moving party successfully established that it was unable to serve an elusive international defendant that was striving to evade service of process. *Id.* at 1016. The *Rio* court held that service by e-mail through an e-mail address on the defendant's website was therefore a viable method of service given the circumstances. *Id.* Here, Hobbs did not set forth any facts or circumstances that suggest Genesys is elusive or evading service and cannot be served formally, other than asserting that there is an absence of an international agreement setting forth method of service. While this may be true, international agreement may not the only applicable law. In addition to Rule 4(f)(3), Rule 4(f)(2) authorizes service "by a method reasonably calculated to give notice" in the absence of international agreement, such as methods "prescribed by the foreign country's law for service in that country[.]" *See* Fed. R. Civ. P. 4(f)(2)(A). Surprisingly, Hobbs makes no mention of Curaçao law, which may not only apply but is also relevant to the Court's consideration given the Advisory Committee's Note stating that "service by methods that would violate foreign law is generally not authorized." Fed. R. Civ. P. 4(f)(2*)* advisory committee note

to 1993 amendment. Hobbs has neither established that alternative service is necessary nor shown that its preferred methods would not offend the foreign jurisdiction.

In the alternative, Hobbs requests the Court to authorize service by e-mail or mail on Mr. Rome as counsel for Genesys. The Court will not do so without confirmation that Mr. Rome represents or has at least consulted Genesys regarding this action. That Mr. Rome represented Genesys in *Taucher* and was willing to forward summons to Genesys here is insufficient to confirm that he is retained counsel. The *Rio* court determined that service upon the defendant's American attorney was proper because "he had been specifically consulted by [the defendant] regarding this lawsuit." *Id.* Even if the question of representation remains unanswered, there is no indication that Mr. Rome even consulted Genesys regarding the instant action. Mr. Rome did not respond to Hobbs's request for assistance with service or agree to waive service. Mr. Rome has not filed an appearance, responded to the instant motion, or otherwise taken any action in representation of Genesys.

Hobbs has failed to establish both that her methods of alternative service are reasonably calculated to apprise Genesys of the action and afford it an opportunity to respond and that the methods are most likely to reach Genesys without also running afoul of either international or local law. Hobbs's motion for alternative service is premature given that she has not attempted service in this action and cannot demonstrate that any prior attempt was reasonable or that any future attempt is futile. Therefore, the motion will be denied without prejudice. Hobbs shall be afforded the opportunity to supplement her motion with authority supporting the assertion that Curaçao is not a party to the Hague Convention, including by extension of its association with the Netherlands. If Curaçao is not a party to the Hague Convention, then the supplement must address

whether the contemplated service is permissible pursuant to any applicable laws or procedure set forth by Curaçao authority as well as the Federal Rules of Civil Procedure.

### 3.  ORDER

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's Motion for Alternative Service (DN 5) is **DENIED without prejudice**.  Plaintiff may supplement the Motion as described herein on or before **April 5, 2024**.

cc:  Counsel of record